```
                   UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF FLORIDA
                         MIAMI DIVISION
                   CASE NO. 16-cr-20349-RNS-1


 UNITED STATES OF AMERICA,       Miami, Florida

        Government,              November 28, 2017

    vs.                          8:59 a.m. to 9:21 a.m.

 JAMES GONZALO MEDINA,           Courtroom 12-3

        Defendant.               (Pages 1 to 18)
_____

                           SENTENCING
             BEFORE THE HONORABLE ROBERT N. SCOLA,
                   UNITED STATES DISTRICT JUDGE

 APPEARANCES:

 FOR THE GOVERNMENT:    MARC S. ANTON, ESQ.
                        MICHAEL THAKUR, ESQ.
                        Assistant United States Attorney
                        99 Northeast Fourth Street
                        Miami, FL 33132
                        (305)961-9001
                        Marc.anton@usdoj.gov

 FOR THE DEFENDANT:     HECTOR A. DOPICO, ESQ.
                        Assistant Federal Public Defender
                        150 West Flagler Street
                        Miami, FL 33130
                        (305)530-7000
                        Hector_Dopico@fd.org


 Also Present:          SYRETA GOULD, USPO
```

```
 1    APPEARANCES CONTINUED:

 2     REPORTED BY:            STEPHANIE A. McCARN, RPR
                                Official Court Reporter
 3                              400 North Miami Avenue
                                Twelfth Floor
 4                              Miami, Florida 33128
                                (305) 523-5518
 5                              Stephanie_McCarn@flsd.uscourts.gov

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

# I N D E X

## WITNESSES

**WITNESSES FOR THE GOVERNMENT:** **Page**
--

**WITNESSES FOR THE DEFENDANT:** **Page**
--

| EXHIBITS IN EVIDENCE | PRE | MARKED | ADMITTED |
|---|---|---|---|
| Government's Exhibit No. | -- | -- | -- |
| Defendant's Exhibit No. | -- | -- | -- |

## MISCELLANEOUS

Page
Proceedings......................................... 4
Court Reporter's Certificate....................... 18

```
 1       (The following proceedings were held at 8:59 a.m.)
 2            THE COURT SECURITY OFFICER:  All rise.  Good morning,
 3  everyone.  Robert Scola, Jr., presiding.
 4            THE COURT:  Good morning, everyone.  Please be seated.
 5       (Pause in proceedings.)
 6            THE COURT:  All right.  Our first matter this morning
 7  is United States of America v. James Gonzalo Medina.  Could you
 8  state your appearances, please?
 9            MR. ANTON:  Good morning, Your Honor.  Marc Anton and
10  Michael Thakur on behalf of the United States.
11            MR. THAKUR:  Good morning, Your Honor.
12            THE COURT:  Good morning.
13            MR. DOPICO:  And good morning, Judge.  Hector Dopico
14  with a Federal Defender, on behalf of Jason Medina, who's
15  present before the Court.
16            THE COURT:  All right.  Good morning.  Good morning,
17  Mr. Medina.
18            MR. MEDINA:  Good morning.
19            PROBATION OFFICER:  Good morning, Your Honor.
20  Syreta Gould on behalf of U.S. Probation.
21            THE COURT:  All right.  Good morning.
22            This matter is set for sentencing this morning.  Are
23  both sides prepared to go forward with the sentencing?
24            MR. ANTON:  Yes, Your Honor.
25            MR. DOPICO:  Yes, Your Honor.
```

```
1            THE COURT:  All right.  Has each side received and
2   reviewed the Presentence Investigation Report as well as the
3   addendum to the report?
4            MR. ANTON:  Yes, Judge.
5            MR. DOPICO:  Yes, Judge.
6            THE COURT:  And, Mr. Medina, have you gone over the
7   presentence investigation report and the addendum with your
8   attorney?
9            THE DEFENDANT:  Yes, sir.
10           THE COURT:  All right.  Does either side have any
11  objections to the report?
12           MR. ANTON:  Nothing from the Government, no.
13           MR. DOPICO:  No, Your Honor.
14           THE COURT:  All right.  So since there are no
15  objections, I find that the base offense level is a Level 33.
16  There is a 12-level increase because the offense is a felony
17  that involved or was intended to promote a federal crime of
18  terrorism.
19           There's a three-level increase because the Court has
20  determined beyond a reasonable doubt the Defendant
21  intentionally selected any victim or any property as the object
22  of the offense of conviction because of the actual or perceived
23  race, color, religion, national origin, ethnicity, gender,
24  disability, or sexual orientation of any person.  That gives an
25  adjusted offense Level of 48.
```

```
 1              There is no acceptance of responsibility adjustment.
 2              MR. DOPICO:  Judge, he's prepared to make a short
 3   statement, but because of the nature of the plea, it is
 4   somewhat academic at this point; so we have not submitted a
 5   formal one in writing.
 6              THE COURT:  Okay.  So under the guidelines where the
 7   total offense level exceeds 43, that level will be treated as a
 8   Level 43.  So the total offense level then is Level 43, which
 9   under the guidelines calls for a life sentence.  So -- and he
10   scores criminal history Category 6.
11              So with that as the advisory guideline range and in
12   consideration of the 18 United States Code, §3553(a) factors,
13   what is the Government's position as to an appropriate sentence
14   and why?
15              MR. ANTON:  Judge, I would note for the Court that the
16   Defense filed under Docket Entry No.74, an unopposed motion to
17   have the Defendant committed to the custody of the attorney
18   general pursuant to Title 18, United States Code, §4244.
19   Your Honor has had the opportunity to review the Defendant's
20   mental history both in the competency stage as well as through
21   Defense filings prior to sentencing.  The Government similarly
22   has had the opportunity to review such filings and would agree
23   with the Defendant that had Your Honor had a hearing, that
24   would have been required under 4244, that the Government would
25   stipulate that there is a preponderance of the evidence that
```

1  Your Honor would want to make a finding that the Defendant is
2  suffering from a mental disease or defect, and that we would
3  concur with the Defense recommendation to have the Defendant
4  committed under 4244, for a provisional sentence of life
5  imprisonment as to both counts.
6      This sentencing scheme is not necessarily new, but it
7  hasn't been often used, and perhaps the Court is not familiar,
8  but basically in a nutshell, under 4244, the Defendant, if Your
9  Honor orders it, is sent to a BOP facility.  We're not talking
10 an outpatient mental health facility.  We are talking secure,
11 in custody, for all intents and purposes, prison, mental health
12 facility within an actual BOP jail.  The Defendant then is
13 evaluated and treated for his mental condition.  If the prison
14 determines at the end of his treatment that he is essentially
15 cured of his mental disease or defect, he is remanded back to
16 the courts for his final sentencing.  Wherein both parties have
17 agreed that Your Honor would ultimately sentence him to 25
18 years, for lack of a better term, in general population with
19 whatever additional conditions Your Honor sees fit.
20     So I want the Court to feel secure that even if the
21 Defendant is committed under 4244, he will be sent to a BOP
22 prison, but will be treated within that prison a bit more
23 special than regular general population inmates would be to
24 address his, as you can see, serious mental health conditions.
25     So with that said, Your Honor, I'd ask that you go

1  along with the recommendation of the parties and that you enter
2  an order finding by a preponderance of the evidence that the
3  Defendant does suffer from a mental disease or defect, commit
4  him under 4244, and sentence him at this point provisionally to
5  life in prison on both counts to run concurrently.
6           THE COURT:  And -- again, I haven't decided what I'm
7  going to do, I haven't heard everything, but assuming that I go
8  along with the joint recommendation, don't I need to announce
9  today that the sentence would be 25 years?  I mean, I don't
10 want 10 years from now if he finishes and goes back and he
11 might be in front of another judge who doesn't give effect to
12 the agreement of the parties or something, if the judge agrees
13 with that.
14          MR. DOPICO:  Your Honor, if I might, the way 4244 is
15 structured, you enter the statutory max as a provisional
16 sentence.
17          THE COURT:  Correct.
18          MR. DOPICO:  The likelihood is that Mr. Medina, after
19 some period of time, will be returned for final sentencing.
20 We're not sure when that's going to be.  We have in place a
21 provision that if after a certain number of years, which would
22 have amounted to the 25 years, he has not returned, that we
23 would then file something with the Court -- it might not be
24 Your Honor, might not be Mr. Anton and myself, but in order to
25 make sure he returns to custody for final sentence and can be

1  released.  I do not believe we'll be in that situation, I
2  believe he will be treated in less than the 25 years and
3  hopefully be in a better condition to receive his final
4  sentence, Judge.
5          THE COURT:  Okay.
6          MR. DOPICO:  The plea that we filed outlines the
7  mental disease or defect, and if you'd like, I can speak about
8  it, Your Honor.
9          THE COURT:  Okay.
10         MR. DOPICO:  But essentially, Your Honor, as the Court
11 recalls, we initially raised competence in this matter because
12 from pretty early on meeting Mr. Medina he seemed to have some
13 cognitive impairments, and he seemed to be somewhat psychotic,
14 Judge.  In reviewing the discovery, that was only further
15 confirmed; so we enlisted a neuropsychological evaluation by
16 Dr. Ouaou, who initially concluded he was not competent, likely
17 schizoaffective, but likely something from either some amount
18 of traumatic brain injury or some organic reason that could be
19 the underlying cause for the psychosis.
20         We then hired Dr. Caluno (phonetic), and if Your Honor
21 recalls, we asked the Court to order that he be transported to
22 Jackson Memorial, where he was scanned and received MRI, MRA
23 and a PET scans, Judge.  Dr. Caluno interpreted those and
24 essentially what was found, which is consistent with his
25 medical history dating back to a 2007 car accident, Judge, is

1  Mr. Medina has an arachnoid cyst in what's call the mid-cranial
2  fossa and temporal lobe of his brain.  That sits, according to
3  Dr. Caluno and according to much of the literature, is in the
4  exact spot that would lead to psychosis, delusions,
5  hallucinations, and would also lead to executive impairment or
6  executive function or dysfunction, in this case, Judge.  So
7  Dr. Caluno concluded that's the underlying reason for his
8  psychosis and his executive impairment along with some amount
9  of traumatic brain injury from that 2007 motor vehicle
10 accident, Judge.
11        And Dr. Caluno set forth a plan, which is at the end
12 of our pleading, basically saying that Mr. Medina should be
13 sent to a federal medical center where he can receive a
14 neuropsychological evaluation both before and after any
15 surgery, a neurosurgical consultation in order to determine if
16 the cyst can be safely removed, if it continues to grow.
17 According to the hospital records from 2007 and the most recent
18 scan, the cyst from 2007 to today has continued to grow, so
19 there's some concern that the cyst's growth could have further
20 detrimental health issues, which is why we really believe a
21 federal medical center is appropriate.
22        Once the neurosurgeon decides to do surgery or not,
23 then there could be further testing to see if the surgery
24 worked.  And if it did work, then he will no longer need
25 medication.  If it does not work, then he's still mentally ill

1  and possibly schizoaffective separate from the organic reason
2  for that psychosis, Judge. Then he would be continued on a
3  antipsychotic medication, which is what he's currently taking
4  now at the federal detention center.
5  But our main concern, Your Honor, is because he has
6  something in his brain that has continued to grow, putting him
7  in a general population, in a prison where he is not taken
8  regularly to the hospital to be scanned or to consult with
9  anyone, I think, is going to be problematic for him and also
10  potentially even for other inmates. I think it's best to get
11  this issue addressed, and I think a federal medical center is
12  the best place.
13  We listed in our pleading, Judge, Rochester,
14  Minnesota, but FMC Butner is another one Your Honor I'm sure is
15  familiar with. But either of those, I think, would be
16  excellent places where they specialize in having psychiatric
17  and psychological treatment. They, I'm sure, have
18  neuropsychologist available, and so he would need all that, and
19  a neurosurgical consult to see what's going on. But, Judge,
20  essentially the tragedy in this case is, had this cyst been
21  spotted and documented in 2007 and removed back then, it's
22  quite possible none of us would be here today. So this is one
23  of these heartbreaking cases where there is likely an organic
24  cause for criminality which is something that, in this day and
25  age, we don't often see, but as technology advances we might

```
 1   see more.
 2           But for all those reasons, Judge, we would ask the
 3   Court then to sentence him to the custody of the attorney
 4   general and then recommend that he get a neuropsychological
 5   evaluation and a neurosurgical consult for the arachnoid cyst
 6   in his brain.  And all the language is laid out in the
 7   pleading, Your Honor.  I know I'm using a lot of technical
 8   terms and apologize for that.
 9           MR. ANTON:  Judge, to address your question there
10   previously, at the end of the day, this is a Rule 11 plea, so
11   Your Honor has to be comfortable ultimately sentencing the
12   Defendant to 25 years.  But the Government and the Defendant
13   agree that this is the appropriate disposition in the instant
14   case based, not only on the Defendant's mental history but upon
15   his conduct and a review of employment history, mental health
16   history, criminal history, that this is the appropriate
17   resolution.
18           So if Your Honor is comfortable placing on the record
19   some sort of statement to the effect of pursuant to 44 -- 4244,
20   I hereby sentence the Defendant provisionally to a term of life
21   imprisonment; however, it is the intent of the parties and the
22   intent of the sentencing judge to ultimately sentence the
23   Defendant to 25 years in prison such that should some other
24   judge or party review the record after we've all left this
25   courtroom, it would be crystal-clear as to what the parties
```

1  have agreed upon despite the fact that it is also laid out in
2  the plea agreement and all the filings of the parties.  At
3  least there would be some sort of, I guess, judicial record of
4  Your Honor's sentencing intention, because, quite honestly,
5  again today, if Your Honor or any future honor doesn't go along
6  with a 25-year final sentence, the provisions of Rule 11 will
7  kick in and would, in theory, allow the Defendant to withdraw
8  his plea anyway.
9          So I think a 25-year sentence is not only appropriate
10 but is probably something that should be memorialized by Your
11 Honor, not necessarily on the judgment and conviction, but
12 certainly here in open court.
13         THE COURT:  All right.  Thank you.
14         Mr. Medina, you have the right to make a statement to
15 me, before I impose sentence.  You don't have to say anything,
16 but if you would like to say something, this is your chance.
17         THE DEFENDANT:  I just need help.  I need help, Your
18 Honor.  You know, I lost everything.  You know, I became a
19 Muslim thinking life would be better, but nothing -- I didn't
20 solve anything.  I still was -- wasn't able to see my children.
21 My life was taken from me, and I lost my mind.  I lashed out.
22         THE COURT:  Okay.  All right.  Thank you.
23         All right.  The Court has considered the statements of
24 the parties, the presentence report which contains the advisory
25 guidelines, as well as the statutory factors set forth in

```
 1   18 United States Code, §3553(a).  Having previously determined
 2   that the total offense level is Level 43, with a criminal
 3   history category 6, and the advisory guideline provision of
 4   life in prison, I first, find the Defendant is not able to pay
 5   any fine, so I will not impose a fine.
 6           The first thing that jumped out at me was the criminal
 7   history Category 6 -- the crime that he is going to be
 8   sentenced for is such a serious offense.  But, I guess, any
 9   person who is convicted of this crime is just automatically --
10   falls within criminal Category 6, even if you have never been
11   arrested before.  So I think it's important to note, that even
12   though he falls within criminal history Category 6, based upon
13   his actual criminal history, if it weren't for this type of
14   case, it would be criminal history Category 2.  And more
15   importantly to me, that he did have a felony strong-arm robbery
16   conviction when he was 18 years old in 1994, but since then,
17   the only convictions he had are either for boating or traffic
18   violations and a -- three marijuana misdemeanors.  So for over
19   20 years, he hasn't committed any felonies and certainly not
20   any crimes of violence, and again, this is a very, very serious
21   offense and could have resulted -- had there not been
22   intervention -- injuries and death to many people, so as a
23   starting point there has to be a significant sentence.
24           But I have reviewed the joint recommendation of the
25   parties, reviewed all of the medical records of Mr. Medina.
```

1    And as a starting point I would say that if you are going to go
2    forward with the sentencing today, without the issue of the
3    referral to the custody of the attorney general, I would accept
4    the parties' joint recommendation and sentence him to 25 years
5    in prison on each of the two counts concurrent with each other
6    for a total of 25 years.  But I do believe under 18 United
7    States Code, § 4244, Mr. -- qualifies to be remanded to the
8    custody of the attorney general, to be hospitalized for the
9    mental disease and defect that he's presently -- from which
10   he's presently suffering.
11           So under the provisions of 18 United States Code,
12   § 4244, I am sentencing him today to a provisional life
13   sentence on each of Counts 1 and 2, to be concurrent with each
14   other, and if and when it is later determined that he is no
15   longer in need of treatment in a facility within the custody of
16   the attorney general, then he will be remanded back to court.
17   And it is my -- if I'm here, obviously, then I already told you
18   what my thoughts are, and it would be my recommendation to any
19   successor judge that he be sentenced to the 25 years on each
20   count concurrent with each other.  The sentence will be
21   modified to that sentence.
22           So I am going to order that the transcript of this
23   sentencing hearing be prepared and filed with the Court so if
24   there is a successor court or successor attorney on either or
25   both sides, then there's a clear understanding of what the

1    intention of this Court was on this date.

2            Upon his release from imprisonment, he will be placed
3    on supervised release for 20 years.  That consists of 20 years
4    as to Count 1, and five years as to Count 2, to be served
5    concurrently with each other.  Within 72 hours of release from
6    the custody of the Bureau of Prisons, he will report in person
7    to the probation office in the district where he's released.
8    While on supervised release, in addition to the standard and
9    statutory conditions of supervised release, the following
10   special conditions will apply:  mental health treatment,
11   substance abuse treatment, self-employment restriction,
12   permissible search condition, and the unpaid restitution fines
13   or special assessment condition each of which are more
14   specifically noted in Part G of the presentence report.  The
15   Defendant must also pay a special assessment of $100 to the
16   United States on each of the two counts for a total of $200,
17   payable immediately.  So the total sentence is a -- is a
18   commitment to the custody of the attorney general and a
19   provisional life sentence on each count to be modified to
20   25 years in prison on each count, followed by 20 years
21   supervised release and a $200 special assessment.

22           I'll recommend that he be placed at a federal medical
23   center at either Rochester, Minnesota, or Butner, North
24   Carolina, and that he receives neuropsychological evaluations
25   and neurosurgical evaluations on a regular basis.

1            Now that the sentence has been imposed, does the
2   Defendant or his counsel object to the Court's finding of fact,
3   the manner in which sentence was pronounced, or any of the
4   Court's sentencing rulings?
5            MR. DOPICO:  No, Your Honor.  Thank you.
6            THE COURT:  All right.  Mr. Medina, you have the right
7   to appeal the sentence that was imposed.  However, any notice
8   of appeal must be filed within 14 days after entry of the
9   judgment.  If you are unable to pay the cost of an appeal, you
10  may apply for leave to appeal *in forma pauperis*, which means
11  you can appeal without prepaying any fees or costs.
12           Is there anything further from either the Government
13  or the Defendant?
14           MR. DOPICO:  No, Your Honor, thank you.
15           MR. ANTON:  No, Your Honor, thank you.
16           THE COURT:  All right.  Good luck to you, Mr. Medina.
17           THE DEFENDANT:  All right.  Thank you.
18           THE COURT:  All right.  We'll be in recess.
19      (The proceedings concluded at 9:21 a.m.)

# C E R T I F I C A T E

I hereby certify that the foregoing is an accurate transcription of the proceedings in the above-entitled matter.

_01/03/18_  
  DATE  

STEPHANIE A. McCARN, RPR  
Official United States Court Reporter  
400 North Miami Avenue, Twelfth Floor  
Miami, Florida 33128  
(305) 523-5518